FILED
2024 Oct-08 PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Case No.** |
| **v.** | ) | |
| | ) | |
| **HEATHER LASHA CRAIG** | ) | |

## PLEA AGREEMENT

The Government and the defendant, **HEATHER LASHA CRAIG**, hereby acknowledge the following plea agreement in this case:

## PLEA

The defendant agrees to (i) plead guilty to **COUNT ONE** of the Information filed in the above-numbered and -captioned matter; (ii) stipulate to United States Sentencing Guideline §3A1.3 (Restraint of Victim)-2 Level Enhancement and §3A1.1 (Vulnerable Victim)-2 Level Enhancement, and (iii) waive certain rights to direct appeal and collateral attack as outlined in section **IV** of this agreement. In exchange, the United States Attorney, acting on behalf of the Government and through the undersigned Assistant United States Attorney, agree to recommend the disposition specified below, subject to the conditions in section **VII**.

 Defendant's Initials HC

## TERMS OF THE AGREEMENT

## I. MAXIMUM PUNISHMENT

The defendant understands that the maximum statutory punishment that may be imposed for the crime of Deprivation of Rights under Color of Law, in violation of Title 18, United States Code, Section 242, as charged in **COUNT ONE** is:

A. Imprisonment for not more than one year;

B. A fine of not more than 100,000.00, or;

C. Both (a and b);

D. Supervised release of not more than one year; and

E. Special Assessment Fee of $25 per count.

## II. FACTUAL BASIS FOR PLEA

The Government is prepared to prove, at a minimum, the following facts at the trial of this case:

On January 12, 2023, the Walker County Jail (Jail) was headed by the elected Sheriff, the Jail Administrator, the Captain, and officers who served as shift supervisors over two day shifts and two night shifts. Each shift was staffed by several officers who performed various duties related to the care, custody, and control of the pre-trial and post-conviction detainees housed there. In general, officers typically, worked 12-hour shifts on a rotation of 4 days on, 4 days off, 3 days on, 3 days off over the course of a two-week period.

While the Jail contained several dorms to house detainees, a limited number of inmates were held for limited periods in observation cells in the "Booking" area. Booking consisted of the Booking desk which formed the central hub of detainee

intake, jail movement, communication, and operations. Eight booking cells could be directly observed by officers at the Booking desk several feet away. Among the eight Booking cells, BK5 was unique in that it was essentially a cement box with a small grate on the floor that opens into a hole for fluids to drain from the cell. Capable of being "flushed" only from outside of the cell, BK5 was often referred to as the drunk tank in that it could easily be hosed down when inebriated people held there would vomit. BK5 was unlike all other cells in the Jail, but for observation cell AH3, which had no hole in the floor and was used only for holding detainees for hours at a time.

BK5 did not have a sink, a toilet, access to any running water, or a raised platform to be used as a bed. Detainees housed in BK5 depended on officers to escort them to a toilet or shower and relied on officers to bring them water. BK5 was notoriously cold during winter months and the temperature on the bare cement floor was even colder. A small window was located on the top half of the cell door and a larger window covered the bottom half of the door. Again, this bottom window was unique among the observation cells, other than AH3, and offered considerably more opportunity for observation from the Booking desk than any of the other Booking cells.

Medical and mental health services were provided by an outside contractor hired by Walker County. As part of the booking process, all detainees booked into the Jail were supposed to receive a medical and mental health screening to ensure that emergent and urgent health needs are met and to determine, among other things, their fitness for confinement. Jailers understood that they could alert nursing staff to inmates' medical and mental needs of which they became aware. In addition to the nurses who served on regular shifts attending to the daily medical needs of the inmates, there were two "providers" who acted as medical supervisors at the Jail: A Nurse Practitioner and a Mental Health Practitioner, both of whom were available to be consulted regarding the medical and mental health needs of the inmates.

On January 12, 2023, Walker County Sheriff's deputies responded to the home of Individual #1 in response to a request that they conduct a mental health welfare check. Individual #1 was arrested after he allegedly fired a gun while deputies were on his property and officers in the Jail became aware of his arrest through the Sheriff's social media posts and conversations amongst themselves. Individual #1 remained detained at the Jail from January 12, 2023, through January 26, 2023, when he was taken to the local hospital. Upon arrival, he suffered cardiac arrest from which he did not recover. Emergency personnel documented his core body temperature as 72 degrees Fahrenheit, a temperature incompatible with life.

During Individual #1's detention, defendant **CRAIG** worked the day shift at the Jail on January 14th, 15th, 16th, 17th, and again on January 22nd, 23rd, and 24th as a correctional officer. During his incarceration, Individual #1 was housed in booking cell BK5. For the vast majority of time, he was housed naked, without a mat or blanket, left to lie on the cold, bare, cement floor.

Defendant **CRAIG** was under the impression that Individual #1 was being kept on "suicide watch" per instructions from the Jail's managers, but believed the designation was out of the ordinary because normally the medical staff determined who was on or off suicide watch and medical did not appear to be caring for Individual #1. Moreover, Individual #1 appeared to be treated differently than other detainees who were placed on suicide watch.

As time passed, defendant **CRAIG** observed Individual #1 to deteriorate physically. Individual #1's speech remained largely unintelligible, he became more listless, and she believed that Individual #1 would be at risk of serious harm if he didn't get help. Defendant **CRAIG** recognized that BK5 was particularly cold in the Jail, especially in the winter, and that lying on the bare cement floor while naked in that temperature was cruel.

Defendant **CRAIG** observed Individual #1 act in ways that suggested he was suffering from significant mental illness, such as running himself into his cell wall, rubbing feces over himself and demonstrating an inability to be lucid during his attempts at communication, including calling her by the name of his sister despite defendant **CRAIG** identifying herself. His cell was filthy, and he didn't appear to be eating his food.

While she assumed that Individual #1 had been the subject of his medical screenings, she became suspicious that nurses appeared to be avoiding him because the conditions under which he was housed remained unchanged and the cruel conditions appeared obvious. She believed that the combination of conditions of confinement and what appeared to be the lack of medical or psychological intervention would ultimately result in serious harm or even death to Individual #1 if not corrected.

Nonetheless, despite the inferences she drew in the face of the objectively obvious harmful conditions, she did not raise her concerns with anyone for fear of being labeled a "snitch" and suffering retaliation from supervisors if she were to ask to send Individual #1 out of the Jail for care. As such, defendant **CRAIG** did not

take reasonable steps to alert appropriate authorities about the objectively harmful conditions of Individual #1's confinement. Instead, she sought to avoid scrutiny from Jail managers by joining others in the Jail who permitted Individual #1 to suffer from the cruel conditions under which he was housed.

**The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further acknowledges that these facts do not constitute all the evidence of each and every act that the defendant and/or any co-conspirators may have committed.**

**HEATHER LASHA CRAIG**

## III. RECOMMENDED SENTENCE

Subject to the limitations in section **VII** regarding subsequent conduct and pursuant to Fed. R. Crim. P. 11(c)(1)(B), the Government will recommend the following disposition:

**A.** That the defendant be awarded a two (2) level reduction in the defendant's adjusted offense level, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct. The Government agrees to make a motion pursuant to USSG §3E1.1(b) for an additional one-level decrease in recognition of the defendant's prompt notification to the Government of the intention to enter a plea of guilty. The Government may oppose any adjustment for acceptance of responsibility if the defendant: (1) fails to admit each and every item in the factual stipulation; (2) denies involvement in the offense; (3) gives conflicting statements about the defendant's involvement in the offense; (4) is untruthful with the Court, the Government, or the United States Probation Officer; (5) obstructs or attempts to obstruct

justice prior to sentencing; (6) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (7) attempts to withdraw the defendant's plea of guilty for any reason other than those expressly enumerated in the "Waiver of Right to Appeal and Post-Conviction Relief" section of this Plea Agreement;

**B.** That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a term consistent within the advisory United States Sentencing Guideline range as calculated by the Court at the time of sentencing;

**C.** That following said term of imprisonment, the defendant be placed on supervised release for a period to be determined by the Court, subject to the Court's standard conditions of supervised release;

**D.** That the defendant be required to pay a fine in accordance with the sentencing guidelines should the Court determine that the defendant has the ability to pay a fine, said amount due and owing as of the date sentence is pronounced, with any outstanding balance to be paid in full by the expiration of the term of supervised release; and,

**E.** That the defendant pay a special assessment of $25.00, said amount due and owing as of the date sentence is pronounced.

## IV. WAIVERS

### A. STATUTE OF LIMITATIONS WAIVER

**In consideration of the recommended disposition of this case, I, HEATHER LASHA CRAIG, hereby understand, acknowledge, and agree that if this plea agreement is set aside for any reason, I will not assert any defense based on any applicable statute of limitations or the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, that includes the passage of time from and including the date of**

 Defendant's Initials HC

**this plea agreement until and including the date of entry of any order setting this plea agreement aside.**

**B. RIGHT TO APPEAL AND POST-CONVICTION RELIEF**

**In consideration of the recommended disposition of this case, I, HEATHER LASHA CRAIG, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the Court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255, and any argument that (1) the statute to which I am pleading guilty is or are unconstitutional or (2) the admitted conduct does not fall within the scope of the statute.**

**The defendant reserves the right to contest in an appeal or post-conviction proceeding(s) the following:**

1. **Any sentence imposed in excess of the applicable statutory maximum sentence(s);**

2. **Any sentence imposed in excess of the Guidelines range determined by the Court at the time sentence is imposed; and**

3. **Ineffective assistance of counsel.**

**The defendant acknowledges that before giving up these rights, the defendant discussed the United States Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the Government retains its right to appeal where authorized by statute.**

**C. WAIVER OF RULE 410, RULE 11, AND SECTION 1B1.8(a)**

**Defendant agrees that if she fails to comply with any of the provisions of this agreement, including the failure to tender such agreement to the district court, or attempts to withdraw the plea (prior to or after pleading guilty to the charges identified in the agreement), the government will have the right to characterize such conduct as a breach of the agreement. In the event of such a breach, the defendant waives any protections afforded by Section 1B1.8(a) of the Sentencing Guidelines, Rule 11 of the Federal Rules of Criminal Procedure, and Rule 410 of the Federal Rules of Evidence, and the government will be free to use against the defendant, directly and indirectly, in any criminal or civil proceeding any of the information, statements, and materials provided by her pursuant to this agreement, including offering into evidence or otherwise using the attached Agreed Factual Basis for Guilty Plea.**

 Defendant's Initials HC

**I, HEATHER LASHA CRAIG, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.**

Heather Lasha Craig
**HEATHER LASHA CRAIG**

## V. UNITED STATES SENTENCING GUIDELINES

The defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's decision in *United States v. Booker*, the federal sentencing guidelines are **advisory** in nature. Sentencing is in the Court's discretion and is not required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the Court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and the defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VI. AGREEMENT NOT BINDING ON COURT

The defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the Government is **NOT BINDING UPON THE COURT,** and that the Court is not required to accept the Government's recommendation. Further, the defendant understands that if the Court does not accept the Government's recommendation, the defendant does not have the right to withdraw the guilty plea.



Defendant's Initials HC

## VII. VOIDING OF AGREEMENT

The defendant understands that if the defendant (a) violates any federal, state, or local law or any condition of pretrial release after entering into this plea agreement, (b) moves the Court to accept a plea of guilty in accordance with, or pursuant to, the provisions of *North Carolina v. Alford*, 400 U.S. 25 (1970), (c) tenders a plea of *nolo contendere* to the charges, (d) violates any other term of this plea agreement, and/or (e) does or says anything that is inconsistent with the acceptance of responsibility, the plea agreement will become NULL and VOID at the election of the United States, and the United States will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein. Further, such election will not entitle the defendant to withdraw a previously entered plea.

The defendant further understands and agrees that if at any time, the government determines that the defendant has, in her communications with the government: 1) falsified, concealed, covered up, or omitted a material fact; 2) made any false, fictitious, or fraudulent statement or representation; or 3) otherwise provided material information or evidence that is not full, complete, and accurate, the obligations of the government under the plea agreement will become NULL and VOID at the election of the United States, and the United States will not be bound by any of the terms, conditions, or recommendations, express or implied, which are



Defendant's Initials HC

contained herein. In that event, the government may also prosecute the defendant for false statements, perjury, or obstruction of justice and use any admissions made by the defendant at any time, including during plea negotiations, for any purpose. Further, such election will not entitle the defendant to withdraw her previously entered plea.

## VIII. OTHER DISTRICTS AND JURISDICTIONS

The defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## IX. COLLECTION OF FINANCIAL OBLIGATION

To facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to:

- fully disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party;
- promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs;
- identify all assets over which the defendant exercises or exercised control, directly or indirectly, within the past five years, or in which the defendant has or had during that time any financial interest;

 Defendant's Initials HC

- take all steps as requested by the Government to obtain from any other parties by any lawful means any records of assets owned at any time by the defendant;
- undergo any polygraph examination the Government may choose to administer concerning such assets and to provide and/or consent to the release of the defendant's tax returns for the previous five years.

The defendant further agrees that the above information, as well as any of the defendant's financial statements and disclosures, will be complete, accurate, and truthful. Finally, the defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

## X. AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts. The defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines. The defendant admits that all the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct. This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors, which may constitute or



Defendant's Initials HC

relate to relevant conduct. Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any and waives objection to the inclusion of that restitution in any order issued by the Court.

## XI. TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS

Unless otherwise specified herein, the defendant understands and acknowledges that this agreement does not apply to or in any way limit any pending or prospective proceedings related to the defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

## XII. IMMIGRATION STATUS

The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the defendant is pleading guilty. The defendant's guilty plea and conviction make it practically inevitable and a virtual certainty that the defendant will be removed or deported from the United States if the defendant is not a citizen of the United States. Removal and other immigration consequences are the subject of a separate proceeding, however; and the defendant understands that



Defendant's Initials HC

no one, including her attorney or the district court, can predict to a certainty the effect of her conviction on her immigration status. Understanding all of this, the defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the plea may entail, even if the consequence is automatic removal from the United States.

## XIII. DEFENDANT'S ACKNOWLEDGEMENT

I have read and understand the provisions of this plea agreement consisting of sixteen (16) pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence on my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO PROMISES OR REPRESENTATIONS OTHER THAN THOSE IN THE AGREEMENT HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**



Defendant's Initials HC

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:

N/A

I understand that this plea agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this plea agreement and have signed the signature line below to indicate that I have read, understand, and approve all the provisions of this plea agreement, both individually and as a total binding agreement.

10/01/2024
DATE

**HEATHER LASHA CRAIG**
Defendant

## XIV. COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my client of all my client's rights and all possible defenses. My client has conveyed to me that my client understands this plea agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment. I concur in the entry of the plea agreement on the terms and conditions set forth herein.

10/01/2024
DATE

**KENNETH GOMANY**
Defendant's Counsel



**Defendant's Initials** HC

## XV. GOVERNMENT'S ACKNOWLEDGMENT

I have reviewed this matter and this plea agreement and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

**PRIM F. ESCALONA**
United States Attorney

10/3/24
DATE

Michael A. Royster

**MICHAEL A. ROYSTER**
Assistant United States Attorney

**KRISTEN CLARKE**
Assistant Attorney General
Civil Rights Division

10/3/24
DATE

**MARK BLUMBERG**
Special Legal Counsel
Civil Rights Division

10/3/24
DATE

Andrew Cherry

**ANDREW CHERRY**
Trial Attorney
Civil Rights Division



Defendant's Initials HC

*(Revised June 2022)*